IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WILLIAMS CONSOLIDATED I, LTD.      §
d/b/a WILLIAMS INSULATION,         §
                                   §
      Plaintiff,                   §
                                   §
v.                                 §
                                   §   CIVIL ACTION NO. H-08-0766
TRAVIS JONES SMITH,                §
TAMMY KRAUSE SMITH,                §
C. RICHARD (DICK) BERGSTROM,       §
AND M.L.RENDLEMAN COMPANY, INC.    §
d/b/a FIBERGLASS INSULATORS        §
INCORPORATED,                      §
                                   §
      Defendants.                  §

**ORDER**

Pending before the court[1] is Defendants' Motion to Transfer Venue (Docket Entry No. 17). The court has considered the motion, all relevant filings, and applicable law. For the reasons set forth below, Defendants' motion to transfer venue is **DENIED**.

### I. Case Background

Williams Consolidated I, Ltd. ("Plaintiff") brought this action to recover damages stemming from Defendants' alleged violations of the Computer Fraud Abuse Act ("CFAA") 18 U.S.C. § 1030, breach of contract, misappropriation of trade secrets and confidential information, conversion, fraud, and unlawful civil

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 4.

1

conspiracy.[2]

Plaintiff is an insulation company located in Texas.[3] Defendants Tammy Krause Smith ("Tammy") and Travis Jones Smith ("Travis") are individuals residing in Hunt County, Texas.[4] Defendant Richard Bergstrom ("Bergstrom") is an individual residing in Harris County, Texas.[5] Defendant M.L. Rendleman Company, doing business as Fiberglass Insulators Incorporated ("FGI"), is a Texas corporation with its principal place of business in Houston, Texas.[6]

Plaintiff is engaged in the business of selling and installing insulation on residential and commercial construction projects.[7] In order to develop and maintain business relationships within the industry, Plaintiff has developed a database containing, among other things, the identities of customers, the particular needs of customers, the terms and details of customer agreements, the purchasing histories of customers, and profit margins on particular jobs.[8]  In order to protect this information, Plaintiff requires

---

[2]    Plaintiff's First Amended Verified Complaint & Application for Preliminary Injunction ("Plaintiff's Amended Complaint"), Docket Entry No. 27, p. 11-15.

[3]    Id. at 2.

[4]    Id. at 2-3.

[5]    Id. at 3.

[6]    Id.

[7]    Id. at 4.

[8]    Id. at 17.

employees to sign confidentiality agreements and restricts employee access to its customer database.[9]   Plaintiff has taken steps to restrict access to the customer database by using a series of codes which link up each employee to information that corresponds with that employee's security clearance.[10]

Defendant Travis Smith was originally hired by Dykes Insulation of Texas, Inc.[11]   As the result of a corporate reorganization, Defendant Travis became an employee of Plaintiff and was tasked with developing and managing customer accounts.[12] Due to the sensitive nature of the consumer database, Travis was required to sign a confidentiality agreement on November 17, 2004.[13] The pertinent portion of said agreement reads:

> Employee will take all reasonable steps and precautions to ensure that the Company's Protected Information are kept secret and confidential for the sole use and benefit of the Company . . . .   Employee will not use the Company's Protected Information for personal purposes or for the benefit or entity other than the Company during or after employment with the company . . . .   Employee will not, without written authorization of the Company, disclose, publish or transfer any Protected Information to any person or entity other than the Company during or after employment with the Company . . . .[14]

---

[9]   Id. at 5.

[10]   Id.

[11]   Id. at 6.

[12]   Id. at 9.

[13]   Id. at 6.

[14]   Id. at 7-8.

During his employment with Plaintiff, Travis accessed Plaintiff's database and printed full Sales Analysis Reports for all of Plaintiff's accounts serviced by the branch where Defendant worked.[15]   After printing the Sales Analysis Reports, Defendant Travis then transferred the information to Defendant FGI.[16]   During this time, FGI's president, Bergstrom, and FGI's Dallas manager, Chris Callaway, exchanged the following correspondence regarding Travis's payment:[17]

> Big Dick,
>
> Okay, I think that we are about to turn a corner here.
>
> I bought Travis Smith lunch at Hooter's because he called and ask [sic] to meet.  His suggestion: HIRE HIS WIFE! Checks for "his" efforts payable to her.  Williams does not know her maiden name . . . .
>
> He [Travis Smith] is accumulating/copying paperwork from all Williams [sic] accounts for the "move".[sic][18]

Plaintiff filed a complaint alleging that it was the victim of a "brazen, unlawful conspiracy."[19]  Specifically, Plaintiff argues that Defendants agreed to use Defendant Travis's position as an employee of Plaintiff to secretly divert confidential information

---

[15]   Id. at 12.

[16]   Id.

[17]   Id. at 10.

[18]   Id.

[19]   Id. at 1.

and business to its industry rival, Defendant FGI.[20] Plaintiff alleges that Defendant FGI hired Defendant Travis's wife, Defendant Tammy, to work for FGI as a way to indirectly pay Travis for his services, while avoiding detection by Plaintiff.[21]

Defendant FGI admits to hiring Defendant Tammy for at least two weeks; however, the parties dispute whether Tammy continues to work for FGI.[22]

Defendant moves the court to transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses.

## II. Legal Standard

Defendants' request to transfer this case to the Northern District of Texas is governed by 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the parties requesting transfer, Defendants bear the burden of establishing that the transferee forum is more convenient than Plaintiff's choice of forum. Time, Inc. v. Manning, 366 F.2d 690,

---

[20]    Id. at 10.

[21]    Id. at 11.

[22]    Plaintiff's Verified Complaint & Application For Temporary Restraining Order & Application For Preliminary Injunction ("Plaintiff's Verified Complaint"), Docket Entry No. 1, p. 9; Defendants Bergstrom and FGI's Response in Opposition to Plaintiff's Verified Complaint (Defendants' Response"), Docket Entry No. 8, p. 4.

698 (5th Cir. 1966).

The Fifth Circuit has recently held that, in deciding whether to grant a 1404(a) transfer, the court must apply a two-pronged test. In re Volkswagen of Am., Inc., 506 F.3d 376, 380. (5th Cir. 2007) (en banc). First, the court must determine if the suit could have been filed originally in the proposed transferee court. Id. Second, the court must give proper deference to the Plaintiff's choice of forum, unless the movant shows "good cause" for the transfer by demonstrating that it is "for the convenience of the parties and witnesses, and in the interests of justice". Id. at 384. Only if the transferee court is clearly more convenient should Plaintiff's initial choice of forum be disturbed. Id.

The Fifth Circuit has created a list of private and public interest factors to be considered by a district court. With respect to private interest factors, the court must consider: (1) the relative ease and access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. In re Volkswagen of Am. Inc., 506 F.3d at 380. As far as the public interest factors are concerned, the court must look at: (1) the administrative difficulties flowing from court congestion; (2) the desire to have localized interests decided at home; (3) the familiarity of the forum with the law that will govern

the case; and (4) the avoidance of unnecessary problems of conflict
of laws or in the application of foreign law.  Id.  In balancing the
convenience and justice factors, the court takes private and public
interest factors into consideration in light of specific facts of
the case.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22,29 (1988).
When reviewing a request for transfer, each of the factors should
be considered, but none are to be given dispositive weight.  Acton
Indus., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 340 (5th Cir.
2004).

### III. Analysis

Defendants argue that the proper venue for this dispute is the
Northern District of Texas, because "all of the transactions" and
"every witness," with the exception of Defendant Bergstrom, live and
work in the Northern District of Texas.[23]  Defendants offer no case
law in support of this argument, nor do they provide any additional
evidence as to why the Northern District is a more "convenient
forum."[24]

Plaintiff asserts that three of the five parties to this
lawsuit are located in Houston, Texas.[25]  Plaintiff contends that a

---

[23]    Defendants' Original Answer, Motion to Transfer and Motion to
Dismiss ("Defendants' Answer"), Docket Entry No. 17, p. 1.

[24]    Id. at 2.

[25]    Plaintiff's Response in Opposition to the Motion to Dismiss and
Motion to Transfer Venue ("Plaintiff's Response"), Docket Entry No. 25, p. 15.

[26]    Plaintiff's Amended Complaint, Docket Entry No. 17, p. 3.

substantial part of the events or omissions giving rise to the claims at issue occurred in the Southern District of Texas.[26] Plaintiff also states that it is impossible to know at this stage of the litigation whether most of the relevant witnesses reside in the Northern District.  For example, given that Defendant FGI has acknowledged that it has either lost, destroyed, or otherwise disposed of recent and "arguably relevant" correspondence in the case, Plaintiff indicates a need to depose FGI's information technology manager, who "may well reside and work" in Houston.[27]

The court finds that Plaintiff could have originally brought this lawsuit in the Northern District of Texas because two defendants, Defendants Travis and Tammy, currently reside in Hunt County.  Although neither conclusive nor determinative, a plaintiff's choice of forum is a factor weighing against transfer. Cf. In re Volkswagen of Am., Inc., 506 F.3d at 380.  As such, Defendants carry the burden of clearly showing why Plaintiff's initial choice should be disturbed.  Id. at 384.  Defendants have provided the court with no caselaw whatsoever and no more than two sentences in support of their argument for transfer of venue.

Private factors substantially support a Southern District venue.  All parties agree that Defendant Bergstrom and Defendant FGI reside in the Southern District. Defendants suggest that every other

---

[27]    Plaintiff's Response, Docket Entry No, p. 15.

relevant witness resides in the Northern District, but provide no evidence to substantiate their claim.  Plaintiff argues that, as discovery proceeds, more events and omissions tied to the lawsuit will be shown to have arisen in the Southern District.

This court is not persuaded that it should disturb Plaintiff's initial choice of forum because the majority of parties to this lawsuit reside in the Southern District of Texas.  While the alleged conspiracy and theft may have occurred in Dallas, the fact remains that at least three of the admittedly relevant parties to this lawsuit reside in the Southern District.

As Defendants have not shown good cause for a transfer of venue, this court must give deference to Plaintiff's choice of forum.

### IV. Conclusion

Based on the foregoing, Defendants' Motion to Transfer Venue is **DENIED**.

**SIGNED** in Houston, Texas, this 9th day of July, 2008.

Nancy K. Johnson
United States Magistrate Judge